T.C. Memo. 2005-203


UNITED STATES TAX COURT


FRANCIS A. MORLINO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18441-03L.              Filed August 24, 2005.


        P asks us to review a determination by R's
settlement officer (SO) that R may proceed with
collection by levy of P's unpaid tax liability for
2001.  P claims that the SO abused his discretion by
prematurely concluding P's hearing when P did not
provide information by the deadline set by the SO.  R
objects to P's testimony as to extenuating
circumstances that prevented him from meeting the
deadline.

        1.  <u>Held</u>:  P's testimony is irrelevant since
neither he nor his counsel communicated the extenuating
circumstances to the SO (nor has P explained his
failure to do so).

        2.  <u>Held</u>, <u>further</u>, R may proceed with collection
since the deadline was reasonable.

Timothy J. Burke, for petitioner.

Nina P. Ching and John V. Cardone, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  This case is before the Court to review a determination made by respondent's Appeals Office that respondent may proceed to collect by levy unpaid taxes with respect to petitioner's 2001 tax year.  We review the determination pursuant to section 6330(d)(1).

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Petitioner resided in Kingston, Massachusetts, at the time the petition was filed.

On November 1, 2002, respondent issued to petitioner a Final Notice–Notice of Intent to Levy and Notice of Your Right to a Hearing.  The notice concerns petitioner's unpaid Federal income tax liability for 2001 of approximately $4,780 (the unpaid tax).

By letter dated November 15, 2002, petitioner's attorney, Timothy J. Burke, submitted to the Internal Revenue Service (IRS) on petitioner's behalf an IRS Form 12153, Request for a Collection Due Process Hearing.  On an attachment to the Form 12153, petitioner asserts:  "It is in the best interest of the

government and the taxpayer that an Offer in Compromise be entered into."

Petitioner raised no other issue on the Form 12153 or during the subsequent hearing accorded him.

On or about November 20, 2002, petitioner submitted an offer in compromise with respect to the unpaid tax. That offer in compromise was rejected on January 15, 2003.

On or about May 6, 2003, an Appeals Office official, settlement officer Eugene O'Shea, was assigned to petitioner's case.

By letter dated July 23, 2003, addressed to petitioner, Mr. O'Shea introduced himself to petitioner, scheduled a meeting with him for August 5, 2003, acknowledged petitioner's request for an offer in compromise, and, in connection with that request, provided him with a questionnaire and an IRS Form 656, Offer in Compromise (the questionnaire and the offer form, respectively). The letter instructed petitioner that he was to complete and submit the questionnaire and offer form to Mr. O'Shea by August 5, 2003, even if the meeting scheduled for that date were to be postponed.

On August 4, 2003, at Mr. Burke's request, Mr. O'Shea moved the August 5, 2003, meeting to August 18, 2003, and gave petitioner until that date, but no later, to provide the requested information and submit the offer form.

On August 18, 2003, Mr. Burke (but not petitioner) met with Mr. O'Shea. Mr. Burke provided Mr. O'Shea with some, but not all, of the information requested on the questionnaire. He did not submit the offer form. Mr. O'Shea again extended the time for completion of the questionnaire and submission of the offer form, until September 2, 2003, and he informed Mr. Burke that no further extension of time would be granted.

Petitioner did not submit the missing information or the offer form to Mr. O'Shea by September 2, 2003, nor did petitioner or Mr. Burke contact Mr. O'Shea between August 18 and September 2, 2003.

On September 10, 2003, Mr. O'Shea determined that collection by levy of the unpaid tax should proceed. In part, Mr. O'Shea based his determination on the fact that petitioner had failed to submit information necessary for an offer in compromise. In making his determination, Mr. O'Shea balanced the need for the efficient collection of taxes with the concern that any collection action be no more intrusive than necessary. He verified that the requirements of applicable laws and administrative procedures had been met.

Petitioner was notified of Mr. O'Shea's determination by a Notice Of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 dated October 2, 2003.

OPINION

## I.  Introduction

The principal issue in this case is whether the settlement officer, Mr. O'Shea, abused his discretion in determining to proceed by levy to collect the unpaid tax.  Before we address that issue, we shall set forth the general rules governing such determinations and our review.  We shall then state the parties' arguments and dispose of respondent's objection to certain testimony of petitioner's.  Finally, we shall decide whether Mr. O'Shea abused his discretion.

## II.  Sections 6330 and 6331

Section 6331(a) authorizes the Secretary of the Treasury (Secretary) to levy against property and property rights where a taxpayer liable for taxes fails to pay those taxes within 10 days after notice and demand for payment is made.  Section 6331(d) requires the Secretary to send the taxpayer written notice of the Secretary's intent to levy, and section 6330(a) requires the Secretary to send the taxpayer written notice of his right to a section 6330 hearing at least 30 days before any levy is begun.[1]

If a section 6330 hearing is requested, the hearing is to be conducted by respondent's Appeals Office, and, at the hearing, the Appeals officer or employee (without distinction, Appeals

_____

[1]  A taxpayer receiving a notice of Federal tax lien has hearing rights similar to the hearing rights accorded a taxpayer receiving a notice of intent to levy.  See sec. 6320(c).

officer) conducting it must verify that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(b)(1), (c)(1).  The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy. Sec. 6330(c)(2)(A).  The taxpayer may contest the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability.  Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection, taking into account, among other things, collection alternatives proposed by the taxpayer and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.  See sec. 6330(c)(3).

We have jurisdiction to review the Appeals officer's determination where we have jurisdiction over the type of tax involved in the case.  Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004).  Where the underlying tax liability is properly at issue, we review the determination de novo.  E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, we review the determination for abuse of discretion.  Id. at 182.  In reviewing

for an abuse of discretion under section 6330(d)(1), generally we consider only arguments, issues, and other matters that were raised at the section 6330 hearing or otherwise brought to the attention of the Appeals Office.  Magana v. Commissioner, 118 T.C. 488, 493 (2002); see also sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.  Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law.  See Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 371 (1995).

III.  The Parties' Arguments

By the petition, petitioner assigns error to Mr. O'Shea's determination that collection by levy of the unpaid tax should proceed.  In support of his assignments, petitioner avers that (1) acceptance of an offer in compromise was in the best interest of respondent and petitioner, and (2) respondent improperly and prematurely concluded petitioner's section 6330 hearing (the hearing).  At trial, petitioner abandoned all issues raised in the petition except that Mr. O'Shea erred by prematurely concluding the hearing.  To prove that Mr. O'Shea acted prematurely, petitioner asks us to consider extenuating circumstances that prevented him from meeting deadlines imposed by Mr. O'Shea.

Respondent counters that Mr. O'Shea did not prematurely conclude the hearing and he did not abuse his discretion in

determining that respondent may proceed with levy to collect the unpaid tax. Respondent objects to the admission of petitioner's evidence of extenuating circumstances, since the administrative record contains no mention of such circumstances.

IV. Admissibility of Petitioner's Testimony

A. The Testimony

At the trial of this case, over the objection of respondent, petitioner testified as to some of his activities during August and September of 2003. The essence of the testimony is as follows: In August of 2003, petitioner and his wife were forced to leave their home in Massachusetts and travel to California in order to attend to their daughter's family after a seizure temporarily left their daughter's husband paralyzed. They flew to California on August 7, 2003, and returned home on August 23, 2003. Much of the information requested by Mr. O'Shea in his letter of July 23, 2003, and thereafter was stored in leased space outside petitioner's home, which delayed petitioner in assembling the information.

Respondent objected to the testimony on the grounds of relevancy. The Court noted respondent's objection but reserved its ruling.

B.  <u>Positions of the Parties</u>

Respondent's relevancy objection is based on the fact that petitioner's underlying liability for the unpaid tax was not raised at the hearing (and is not before the Court). Accordingly, argues respondent, the appropriate standard for our review of Mr. O'Shea's determination is abuse of discretion, and the appropriate scope of review, pursuant to the record rule, is the administrative record made during the hearing.  The record rule is the general rule of administrative law that a court can engage in judicial review of an agency action only on the basis of the record amassed by the agency.  2 Pierce, Administrative Law, sec. 11.6, at 822 (4th ed. 2002); see <u>United States v. Carlo Bianchi & Co.</u>, 373 U.S. 709, 714 (1963).

Petitioner responds that our holding in <u>Robinette v. Commissioner</u>, 123 T.C. 85 (2004), pertains to the matter and the scope of review is not limited to the administrative record.[2]

---

[2]  Recently, the Court of Appeals for the First Circuit reviewed a District Court judgment that, pursuant to sec. 6330(d)(1), had affirmed an Appeals Office determination made pursuant to sec. 6330(c)(3) that a levy to collect certain unpaid employment taxes and penalties could proceed. <u>Olsen v. United States</u>, 414 F.3d 144 (1st Cir. 2005), affg. 326 F. Supp. 2d 184 (D. Mass. 2004).  The Court of Appeals upheld the record rule as defining the scope of judicial review of such a determination when, as in the case it was reviewing, the taxpayer's underlying liability is not in issue.  See <u>id.</u> at __.  The Court of Appeals distinguished <u>Robinette v. Commissioner</u>, 123 T.C. 85 (2004). <u>Olsen v. United States</u>, <u>supra</u> at __ n.9. Therefore, we are not required by the doctrine of <u>Golsen v. Commissioner</u>, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), to follow <u>Olsen</u>,
(continued...)

Petitioner argues that his testimony "[demonstrates] the inflexibility of the Hearing Officer".

C. Discussion

At trial, petitioner specifically disclaimed that his underlying liability for the unpaid tax is at issue. The appropriate standard of review is, therefore, abuse of discretion. See supra sec. II of this report.

Robinette v. Commissioner, supra, is a case of this Court in which, pursuant to section 6330(d)(1), we reviewed a determination by an Appeals officer to proceed with collection of an unpaid tax. Since the taxpayer's underlying liability was not an issue, we determined that the proper standard of review was abuse of discretion. Id. at 94. Nevertheless, we considered testimony and other evidence that was not part of the administrative record. Id. at 103-104. We noted, however, that any evidence admissible in a trial before this court had to be admissible under the Federal Rules of Evidence. Id. at 103. We rejected the Commissioner's argument that the evidence in question was inadmissible because not relevant. Id. at 103-104 (discussing rules 401 and 402 of the Federal Rules of Evidence). We found the evidence relevant because it tended to show that the

---

[2](...continued)
notwithstanding that, barring stipulation of the parties to the contrary, appeal of this case would lie to the Court of Appeals for the First Circuit. See sec. 7482(b).

Appeals officer abused his discretion in determining to proceed with collection.  Id. at 104.

The term "relevant evidence" is defined in rule 401 of the Federal Rules of Evidence to mean "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  The testimony in the instant case is relevant, and therefore admissible, if and only if the testimony has a tendency to make the existence of any fact that is of consequence in determining whether Mr. O'Shea abused his discretion more probable or less probable than it would be without the evidence.  Cf. Robinette v. Commissioner, supra at 103-104.

When considered in light of petitioner's purpose in offering the testimony--to show Mr. O'Shea's inflexibility--the testimony is not relevant for the simple reason that there is no evidence that either petitioner or Mr. Burke ever informed Mr. O'Shea of petitioner's difficulties in assembling the information necessary to respond to Mr. O'Shea's requests.  Because Mr. O'Shea was never informed of those difficulties, the difficulties can hardly have had any bearing on Mr. O'Shea's determination to proceed with collection.  Stated in the terms of rule 401 of the Federal Rules of Evidence, the testimony cannot possibly have any tendency to make the existence of any fact that is of consequence

in determining whether Mr. O'Shea abused his discretion more or less probable--because he was never notified of the extenuating circumstances that are the subject of the testimony.[3]

Because the testimony is irrelevant, it is inadmissible. See Fed. R. Evid. 402.

### D.  Conclusion

Respondent's objection to the testimony is sustained.

## V.  Abuse of Discretion

### A.  Introduction

We are left to determine whether Mr. O'Shea abused his discretion in determining that respondent may proceed by levy to collect the unpaid tax.  Petitioner claims that he did because he prematurely concluded the hearing.

### B.  Discussion

In Clawson v. Commissioner, T.C. Memo. 2004-106, fewer than 3 months passed between the taxpayer's filing a request for a section 6330 hearing concerning a proposed levy and an adverse determination by an Appeals officer.  Approximately 1 month passed after the Appeals officer's offer of a telephonic hearing

---

[3]  Nor has petitioner offered any excuse for his failure to explain to Mr. O'Shea his difficulties in complying with Mr. O'Shea's Sept. 2, 2003, deadline when compliance with that deadline became problematic.  Cf. Magana v. Commissioner, 118 T.C. 488, 494 (2002) (unusual illness or hardship or other special circumstances may justify an exception to the general rule that, in reviewing for an abuse of discretion under sec. 6330(d)(1), the Court will not consider issues not raised at the sec. 6330 hearing).

until the adverse determination, and only 9 days passed after the telephone conference until the adverse determination. The taxpayer argued that the Appeals officer abused his discretion because he reached his decision to sustain the proposed levy in "barely one month" after he contacted petitioners. We held: "[T]here is neither requirement nor reason that the Appeals officer wait a certain amount of time before rendering his determination as to a proposed levy." As authority, we cited section 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs., which provides that there is no period of time in which Appeals must conduct a section 6330 hearing or issue a notice of determination: "Appeals will, however, attempt to conduct a * * * [section 6330 hearing] and issue a Notice of Determination as expeditiously as possible under the circumstances."

In this case, Mr. O'Shea made his determination almost 10 months after petitioner filed the Form 12153, his request for a section 6330 hearing. It is clear from the Form 12153 that petitioner contemplated making an offer in compromise at the hearing. He submitted an offer in compromise on November 20, 2002, which was rejected on January 15, 2003 (the record contains no further information with respect to the rejected offer in compromise). By letter dated July 23, 2003, Mr. O'Shea scheduled a meeting with petitioner for August 5, 2003. Mr. O'Shea enclosed with the letter the questionnaire and offer form, which

petitioner was asked to complete and submit by the date of the meeting. The meeting was postponed until August 18, 2003, and petitioner was given an extension until then to submit the questionnaire and offer form. Petitioner did not complete the questionnaire by the time of the postponed meeting, nor did he submit the offer form at that meeting. Mr. O'Shea again extended the time for completion of the questionnaire and submission of the offer form, establishing a deadline of September 2, 2003, and telling Mr. Burke that no further extension of time would be granted. Not only did petitioner fail to meet that deadline, but neither petitioner nor Mr. Burke contacted Mr. O'Shea to explain any circumstance of delay or to request an extension of the deadline.

Petitioner does not argue that Mr. O'Shea was without discretion to set a deadline, only that he abused his discretion by setting the deadline too soon. We disagree. Mr. O'Shea's establishment of a deadline of September 2, 2003, to complete the questionnaire and the offer form was not unreasonable in light of the facts that petitioner: (1) submitted the Form 12153 in November 2002, (2) had from July 23, 2003 (the date Mr. O'Shea provided him with the questionnaire and the offer form), until September 2, 2003, to complete those documents, and (3) had experience with offers in compromise, which, previously, he had

submitted.[4]  While the final 2-week deadline may seem short when considered in isolation, we do not consider it in isolation. Rather, we consider it in context, see, e.g., Roman v. Commissioner, T.C. Memo. 2004-20, which context includes the longer period that petitioner had to comply with Mr. O'Shea's requests and the fact that there is no evidence that either petitioner or Mr. Burke protested the deadline or asked for any extension.  If there is fault here, it lies not with Mr. O'Shea in setting a deadline of September 2, 2003.

    C.  Other Arguments

        1.  Introduction

On brief, petitioner describes the following errors, which are either in addition to or supplement his principal assignment of error, that Mr. O'Shea abused his discretion by prematurely concluding the section 6330 hearing:  (1) Mr. O'Shea was biased by his belief that the hearing had to be promptly concluded, (2) respondent did not conduct the hearing in good faith, (3) respondent was not flexible in considering petitioner's matter, (4) the lack of ascertainable standards to be followed at section 6330 hearings violates due process, and (5) Mr. O'Shea was not

---

[4]  In addition to referencing the offer in compromise that petitioner submitted on Nov. 20, 2002, and which was rejected on Jan. 15, 2003, the record contains a copy of another rejected offer in compromise, signed by petitioner on July 9, 2001, and relating to trust fund recovery penalties imposed with respect to employment taxes due in 1997.

impartial since he both conducted the section 6330 hearing and considered petitioner's offer in compromise.

As a general rule, a party cannot argue on brief an issue not raised in the petition. See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Moreover, as stated supra in section III. of this report, at trial petitioner abandoned all issues raised in the petition except that Mr. O'Shea erred by prematurely concluding the hearing. Respondent asks that we reject all of petitioner's other arguments as having been either conceded or abandoned. We accept respondent's request, except that we do consider petitioner's arguments with respect to bias and inflexibility, since we think that they relate closely to the one issue (premature conclusion) that petitioner has preserved.

### 2. Bias

Petitioner argues: Mr. O'Shea "was biased by his belief that the hearing had to be promptly concluded." Beside the fact that Mr. O'Shea set, and stuck to, a deadline of September 2, 2003, for petitioner to submit information necessary for an offer in compromise, petitioner has shown no facts that would support his claim of bias. As we made plain supra in section V.B. of this report, there is no requirement that an Appeals officer wait a certain amount of time before concluding a section 6330 hearing. Petitioner has failed to show bias.

### 3. Lack of Flexibility

Petitioner argues: Mr. O'Shea "did not act with flexibility but with a clear predisposition toward an inflexible and expeditious determination of petitioner's matter." While it is true that Mr. O'Shea set, and stuck to a deadline of September 2, 2003, and told Mr. Burke that he would not extend that deadline, the facts in evidence hardly lead to the conclusion that Mr. O'Shea was inflexible. Indeed, he had twice before established due dates for the requested information but, when petitioner failed to comply, extended those due dates. Moreover, there is no evidence that when the September 2, 2003, deadline was set Mr. Burke made any protest or that, thereafter, as the deadline approached, he or petitioner asked for any extension of the deadline. In fact, Mr. O'Shea's records show no contact with Mr. Burke until September 29, 2003, when Mr. Burke's secretary called Mr. O'Shea to ask if any more information was needed. She was told by Mr. O'Shea that the information had been due on September 2, 2003, and the case had been closed (and, indeed, the notice of Mr. O'Shea's determination was mailed to petitioner 4 days later). We do not find that Mr. O'Shea was inflexible. While he may have been predisposed to an expeditious determination of petitioner's matter, we see nothing wrong with that, given the facts before us.

D.  Conclusion

Mr. O'Shea did not abuse his discretion in determining that respondent may proceed by levy to collect the unpaid tax.

VI.  Conclusion

To reflect the foregoing,

Decision will be entered

for respondent.