T.C. Memo. 2009-284

UNITED STATES TAX COURT

EUGENE M. DININO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5596-09L.                    Filed December 10, 2009.

P was assessed trust fund recovery penalties under I.R.C. sec. 6672, and when he failed to pay after notice and demand, the IRS issued a notice of intent to levy. P requested a collection due process (CDP) hearing before the Office of Appeals, indicating that he wanted to submit an offer-in-compromise (OIC). However, P failed to participate in the hearing as scheduled and made no response to a subsequent invitation to submit information. Two and a half months later P's representative asked for a conference; but when his request was granted, he asked that the conference be delayed by a month, and the appeals officer agreed. When the delayed conference occurred, P's representative asked for another month to be allowed to submit an OIC and supporting information, and the appeals officer agreed. When the appointed day approached, P's representative left several telephone messages requesting a further extension of time. The appeals officer made no response, and after the passage of two more months (during which P submitted no OIC or

supporting information), the Office of Appeals issued its notice of determination upholding the proposed levy.

Held: The Office of Appeals did not abuse its discretion when it did not grant P's request for further extensions of time and instead issued a notice of determination sustaining the proposed levy.

Ira B. Stechel, for petitioner.

Justin L. Campolieta, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge: This case is an appeal by petitioner Eugene M. Dinino, under section 6330(d).[1] Mr. Dinino seeks our review of the determination by the Internal Revenue Service (IRS) to uphold a proposed levy on his assets. The levy is intended to collect so-called "trust fund recovery penalties" assessed pursuant to section 6672 for various calendar quarters in the years 2000, 2001, 2004, and 2005. This case is now before the Court on respondent's motion for summary judgment, which Mr. Dinino has opposed. The motion will be granted.

---

[1] Except as otherwise noted, all section references are to the Internal Revenue Code (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

### Non-payment of the Underlying Liabilities

During the relevant years Mr. Dinino was owner and chief executive officer of a restaurant in New York City. The IRS determined that, in various calendar quarters in the years 2000, 2001, 2004, and 2005, taxes of over $450,000 had been withheld from the wages of employees of the restaurant but had not been paid over to the IRS. The IRS determined that Mr. Dinino was a person responsible for paying over those taxes and that he had willfully failed to do so. In December 2006 and September 2007 the IRS assessed against Mr. Dinino more than $450,000 in trust fund recovery penalties pursuant to section 6672.

On various dates in 2006 and 2007, the IRS sent Mr. Dinino notices of the liabilities and demanded that he pay them, but he did not do so. On February 26, 2008, the IRS sent Mr. Dinino a "Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing", advising him that the IRS intended to levy to collect the unpaid trust fund liabilities and interest that had accrued thereon, then totaling $572,667.11. The levy notice advised Mr. Dinino that he could receive a collection due process (CDP) hearing before the IRS's Office of Appeals.

### Initial CDP Proceedings

In early April 2008 the IRS received a Form 12153, "Request for a Collection Due Process or Equivalent Hearing", that was

signed by Mr. Dinino's representative as "POA" (power of attorney) and had been timely mailed on March 27, 2008. The Form 12153 indicated that Mr. Dinino desired to submit an offer-in-compromise (OIC). (Neither Mr. Dinino nor his representative ever submitted an OIC.)

On June 10, 2008, an appeals officer[2] with the IRS's Office of Appeals made notes of his "Initial analysis" of the case, which showed "that TP was found willful and responsible on trust fund periods and did go to appeals officer so precluded issue on CDP"); i.e., that Mr. Dinino had already had a prior opportunity to challenge his liability for the trust fund recovery penalty and was therefore precluded from doing so in a CDP hearing. On June 11, 2008, the appeals officer mailed to Mr. Dinino a letter that scheduled a CDP hearing to be held by telephone on June 27, 2008. The letter also invited Mr. Dinino to propose a different date and to request a face-to-face hearing. Mr. Dinino did not respond to the June 11, 2008, letter and did not participate by telephone on June 27, 2008.

On June 27, 2008 (the date that had been scheduled for the hearing), the appeals officer sent Mr. Dinino a second letter,

---

[2]The employee who conducted the CDP hearing is identified in the hearing record as a "settlement officer". Section 6330(c)(1) and (c)(3) refers to the person who conducts the CDP hearing as an "appeals officer"; but section 6330(b)(3) refers to the person as "an officer or employee". Throughout this opinion, we use the statutory term "appeals officer".

informing Mr. Dinino that the Office of Appeals would be issuing a determination based upon the information contained in the administrative file previously developed by the IRS's collection personnel. However, the letter also allowed Mr. Dinino an additional fourteen days (i.e., until July 11, 2008) to provide any further information that he wanted the Office of Appeals to consider. Neither Mr. Dinino nor his representative sent in any information or made any contact by that deadline, nor for two months thereafter.

The foregoing facts bear special emphasis, especially because Mr. Dinino's memorandum opposing respondent's motion for summary judgment ignores them altogether and contends that Mr. Dinino was never given a hearing. The subsequent CDP proceedings that did occur (described below) were undertaken, in an exercise of the discretion of the Office of Appeals, despite Mr. Dinino's unexplained non-appearance at his scheduled hearing and his failure to send in additional information as invited.

Subsequent CDP Proceedings

On September 16, 2008--two and a half months after the date originally set for Mr. Dinino's CDP hearing--the IRS received its first contact from Mr. Dinino after his initial request for a hearing: Mr. Dinino's representative contacted the appeals officer by telephone and asked to set up a conference. Despite Mr. Dinino's prior defaults, the appeals officer agreed to have a

telephone conference on October 1, 2008 (three months after the June 27, 2008, date originally set for the CDP hearing). On that date, however, Mr. Dinino's representative telephoned and explained that he needed more time (apparently to prepare and submit one or more delinquent returns that were prerequisites to IRS consideration of an OIC). The appeals officer granted this first request for more time.

The postponed conference was held on November 5, 2008 (more than four months after the date originally set for the CDP hearing). At that conference, the only issue Mr. Dinino's representative raised was the possibility of an OIC as an alternative to levy. The appeals officer stated that in order to consider an OIC, the IRS would need additional information about Mr. Dinino. His representative agreed to provide, by December 3, 2008, Mr. Dinino's updated financial statement,[3] wage stubs, bank statements, and 2006 income tax return,[4] and to provide

---

[3]The appeals officer had access to Mr. Dinino's financial statement (Form 433-A, Collection Information Statement for Wage earners and Self-Employed Individuals) dated November 20, 2007, which was a year out of date. The Form 433-A had identified a restaurant as Mr. Dinino's employer and sole investment, but in November 2008 Mr. Dinino's representative informed the appeals officer that Mr. Dinino no longer had any interest in that restaurant.

[4]The appeals officer did later determine that Mr. Dinino's delinquent return for 2006 had been filed. The petition suggests (in paragraph 4(d)) that Mr. Dinino's 2007 return was also delinquent, but since respondent does not rely on this fact (which is detrimental to Mr. Dinino), we ignore it.

information to show that Mr. Dinino was no longer associated with the restaurant, as he alleged. The appeals officer agreed to this second extension of time.

Mr. Dinino's representative did not submit an OIC or the promised information on December 3, 2008; and on the agreed-upon date of December 9, 2009 (more than five months after the date originally set for the CDP hearing), the scheduled conference did not occur. Rather, on December 1, 2008, the representative had left a voice-mail message for the appeals officer, stating that he had a scheduling conflict (because of a doctor's appointment) and would like to "reschedule the Collection Due Process hearing and the related deadline for submission of documentation therefor". See infra note 5. That is, he made a third request for an extension of time. He placed similar calls on December 4, 8, 10, and 22, 2008, but received no return call from the appeals officer.[5]

---

[5]Mr. Dinino's representative declares: "To the best of my knowledge, [the appeals officer] * * * did not respond to any of those messages". Although the appeals officer's record recites that he received a voice message from Mr. Dinino's representative on December 3, 2008, it has no entries reflecting messages left December 1, 4, 8, 10, or 22. However, for purposes of respondent's motion for summary judgment we assume the facts as declared by Mr. Dinino's representative in his declaration attached to Mr. Dinino's petition. Respondent's counsel asserts that the telephone number listed in that declaration for the call on December 22, 2008, is not an IRS telephone number, but for purposes of this motion we assume Mr. Dinino's representative's declaration is accurate.

Issuance of the Notice of Determination

Five more weeks went by, and as of January 16, 2009, the appeals officer had still not received from Mr. Dinino or his representative an OIC or the supporting information. By that point, more than six months had passed since the date originally scheduled for the CDP hearing (i.e., June 27, 2008), and more than nine months had passed since Mr. Dinino had submitted his Form 12153 (dated March 27, 2008) requesting a CDP hearing and stating that he wanted to propose an OIC. The appeals officer decided that the proposed levy should be sustained and began processing the paperwork to close Mr. Dinino's appeal. On February 2, 2009--almost a year after the IRS had issued the final notice of levy (on February 26, 2008)--the Office of Appeals issued a notice of determination to Mr. Dinino sustaining the proposed levy.

On March 9, 2009, Mr. Dinino timely filed his petition in response to the notice of determination. The petition states, inter alia:

> 3. The underlying tax liability alleged by Respondent to have existed on Petitioner's part is comprised of civil penalties under Section 6672 of the Internal Revenue Code (the "Code") with respect to the final calendar quarter of 2000, the four calendar quarters of 2001, the final three calendar quarters of 2004, and the four calendar quarters of 2005 * * *.
>
> 4. The Notice of Determination upholding collection of the alleged deficiency against Petitioner is erroneous for the following reasons:

* * * * * * *

j.  In this case, Petitioner has, as the Notice of Determination acknowledges, received no hearing. Instead, a series of phone messages took place, but no hearing ever occurred, although Petitioner's representative repeatedly, but unsuccessfully, attempted to do so.  See <u>Garage v. United States</u>, 96 AFTR 2d 2005-7201 (D.N.J. 2009) (remand to Appeals Office of Notice of Determination when no hearing took place).

k.  Under Section 6330(b)(1), a taxpayer who requests a hearing is entitled to one, and prior to the hearing taking place Respondent cannot proceed with collection of the tax, pursuant to that provision.  See Chief Counsel Advisory 200123060 (June 8, 2001), stating "a taxpayer is entitled to a CDP hearing even if he will raise only frivolous or constitutional arguments because the appeals officer must cover the statutory requirements of Sections 6330(c)(1) and (3)(C) of verification and balancing."

l.  If, as here, no hearing has been conducted, an Appeals officer obviously could not have obtained at the hearing "verification from the Secretary that the requirements of any applicable law or administrative procedure have been met", as required by Section 6330(c)(1), or balanced the need for the "efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary", as required by Section 6330(c)(3)(C).

At the time Mr. Dinino filed his petition, he resided in the State of New York.

## Discussion

I.   Applicable Legal Principles

A.   Trust Fund Recovery Penalty

Section 6672 is an adjunct to payroll taxes.  An employer (such as Mr. Dinino's restaurant) is required to withhold FICA[6] tax and income tax from its employees' wages and to remit the withheld taxes to the Government.  See secs. 3102, 3402, 3403. The FICA tax and the income tax that the employer withholds from employees' wages are held by the employer in trust for the United States, see sec. 7501(a), and are known as trust fund taxes.

The withheld taxes held in trust are sometimes a temptation to employers who are in financial difficulty.  They may be inclined to regard many of their expenses as more urgent than payroll taxes and to use the money for other purposes.  In so doing, they make the Government, in effect, an unwitting and unwilling investor in their troubled businesses.  The Government's eventual receipt of the trust fund taxes is now put at great risk, even though in its dealings with the employees the Government must honor the withholding.  That is, when the employer issues a Form W-2, "Wage and Tax Statement", to the employee showing tax withholding, the employee receives credit on

---

[6]Federal Insurance Contributions Act or FICA tax is a payroll tax imposed on both employers and employees, secs. 3101, 3111, to fund Social Security and Medicare.

his tax return for the tax withheld, even if the employer never pays the tax over to the Government.

To discourage such misuse of the trust fund taxes, section 6672(a) imposes "a penalty equal to the total amount of the tax * * * not accounted for and paid over."  This penalty is imposed on any "person required to collect, truthfully account for, and pay over any" trust fund taxes--referred to in caselaw as a "responsible person"--"who willfully fails" to do so.  See Slodov v. United States, 436 U.S. 238 (1978).  The deficiency notice requirements in sections 6212(a) and 6213(a) are limited to the taxes imposed by subtitle A (income taxes) and subtitle B (estate and gift taxes) and chapters 41 through 44 (excise taxes).  The penalty at issue in this case is imposed by section 6672 with respect to employment taxes imposed by subtitle C, taxes an employer is required to withhold and pay over.  Although the IRS must give the taxpayer notice before imposing the penalty, see sec. 6672(b), the IRS is not required to issue a notice of deficiency before assessing and collecting the section 6672(a) penalty, see Bronson v. United States, 46 F.3d 1573, 1580 (Fed. Cir. 1995); Wilt v. Commissioner, 60 T.C. 977, 978 (1973). The IRS determined that Mr. Dinino was a "responsible person" of his restaurant, and it assessed against him the penalty for trust fund taxes that were not paid over.

B.    Collection Due Process

When a taxpayer fails to pay any Federal tax liability within 10 days of notice and demand, the IRS may collect the unpaid tax by levy on the taxpayer's property, pursuant to section 6331.  However, before the IRS may proceed with that levy, the taxpayer is entitled to administrative and judicial review pursuant to section 6330.  Administrative review is carried out by way of a hearing before the Office of Appeals under section 6330(b) and (c); and if the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court under section 6330(d), as Mr. Dinino has done.

The pertinent procedures for the agency-level CDP hearing are set forth in section 6330(c) and can be stated as four issues:  First, the appeals officer must "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."  Sec. 6330(c)(1). Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy," including challenges to the appropriateness of the collection action and offers of collection alternatives.  Sec. 6330(c)(2)(A).  Third, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax

liability.  Sec. 6330(c)(2)(B).  Fourth, the appeals officer must consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary".  See sec. 6330(c)(3)(C).

If the Office of Appeals then issues a notice of determination to proceed with the proposed levy, the taxpayer may appeal the determination to this Court within 30 days, as Mr. Dinino has done, and we now "have jurisdiction with respect to such matter".  Sec. 6330(d)(1).

Except when the underlying tax liability is at issue, we review the determination of the Office of Appeals for abuse of discretion, Goza v. Commissioner, 114 T.C. 176 (2000)--that is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law, see Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Sego v. Commissioner, 114 T.C. 604, 610 (2000).

C.    Summary Judgment Standard

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary (and potentially expensive) trial.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment may be granted where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law.

Rule 121(a) and (b); see <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); <u>Zaentz v. Commissioner</u>, 90 T.C. 753, 754 (1988).

Summary judgment procedure in this Court is governed by Rule 121 (which is a close equivalent to rule 56 of the Federal Rules of Civil Procedure).  Under Rule 121(b), the movant must show by affidavits or other evidentiary materials "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  The party moving for summary judgment (here, respondent) bears the burden of showing that there is no genuine issue as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment (here, Mr. Dinino).  <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985); <u>Jacklin v. Commissioner</u>, 79 T.C. 340, 344 (1982). Under Rule 121(d), where the moving party properly supports a motion for summary judgment, the party opposing the motion must, "by affidavits or as otherwise provided in this Rule, * * * set forth specific facts showing that there is a genuine issue for trial."

Respondent supported his motion for summary judgment with the declaration (pursuant to 28 U.S.C. section 1746) of the appeals officer, to which were attached the documents that constitute the hearing record.  Petitioner relied on his representative's declaration that had been previously attached to

the petition.  These two declarations are the evidence upon which respondent's motion is decided.

## II.  Whether the Proposed Levy Should Be Sustained

### A.  Failure To Conduct a Hearing

Mr. Dinino's principal contention is that he was denied a hearing when the appeals officer refused to reschedule the hearing that had been scheduled for December 9, 2008.  This contention fails for two reasons.  First, Mr. Dinino was granted a CDP hearing, but he simply failed to appear.  Mr. Dinino himself failed to participate in the telephone hearing that was scheduled and noticed for June 27, 2008; and Mr. Dinino's representative announced that he could not attend the hearing that he had agreed to attend on December 9, 2008.  If Mr. Dinino had no CDP hearing before the Office of Appeals, that lack was not because of the appeals officer but because of Mr. Dinino.

Second, and more important, Mr. Dinino's representative did participate on his behalf in a CDP hearing, although not in a face-to-face session.  Mr. Dinino's contention that he did not have a hearing is evidently founded on a misunderstanding of the nature of a CDP hearing.  His memorandum states:

> Being well aware of the significance attendant to a
> formal CDP hearing, * * * [Mr. Dinino's representative]
> sought to comply with * * * [the appeals officer's]
> request that the additional information that he had
> requested be submitted to him by December 3, 200[8]
> * * *.  [Emphasis added.]

There is, however, no such thing as a "formal CDP hearing".

Rather,

> Hearings at the Appeals level have historically been conducted in an informal setting. Section 601.106(c), Statement of Procedural Rules, provides:
>
> > "(c) Nature of proceedings before Appeals. Proceedings before the Appeals are informal. * * *"
>
> > *       *       *       *       *       *       *
>
> When Congress enacted section 6330 and required that taxpayers be given an opportunity to seek a pre-levy hearing with Appeals, Congress was fully aware of the existing nature and function of Appeals. Nothing in section 6330 or the legislative history suggests that Congress intended to alter the nature of an Appeals hearing * * *. The references in section 6330 to a hearing by Appeals indicate that Congress contemplated the type of informal administrative Appeals hearing that has been historically conducted by Appeals and prescribed by section 601.106(c), Statement of Procedural Rules. * * *

Davis v. Commissioner, 115 T.C. 35, 41 (2000). "A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof." Sec. 301.6330-1(d)(2), A-D6, Proced. & Admin. Regs. (26 C.F.R.). Sometimes a CDP hearing may be conducted "by telephone or by correspondence." Id. A-D7; see also Katz. v. Commissioner, 115 T.C. 329, 337 (2000).

Mr. Dinino's representative had a series of telephone conversations with the appeals officer in which he expressed

Mr. Dinino's desire for an OIC, learned what was needed to effectuate an OIC, and discussed a schedule (revised several times) for providing that information.  These communications constituted a hearing.  The problem for Mr. Dinino was not that he was given <u>no</u> hearing (as he contends) but rather that he was not allowed an indefinite number of sessions in that hearing, on the schedule that he eventually unilaterally demanded.  We find that he did have a hearing, and that the remaining question (addressed below) is whether the appeals officer abused his discretion in denying Mr. Dinino's representative's third request for an extension of time to submit his OIC and supporting information.

    B.    <u>Compliance With the Specific Requirements of Section 6330(c)</u>

        1.    <u>Verification Under Section 6330(c)(1)</u>

As is noted above, section 6330(c)(1) requires the appeals officer conducting a CDP hearing to verify "that the requirements of any applicable law or administrative procedure have been met." In the case of a levy to collect a trust fund recovery penalty under section 6672,[7] the basic "requirements of any applicable law or administrative procedure" for which the appeals officer must obtain verification in order to determine to proceed with a levy are:

---

[7]As is noted <u>supra</u> pt. I.A, the section 6672 penalty is an "assessable penalty" not subject to deficiency procedures.

- the IRS's proper assessment of the liability, see secs. 6201(a)(1), 6501(a), 6672(b);

- the taxpayer's failure to pay the liability after the IRS gives the taxpayer notice and demand for payment of the liability, see secs. 6303 and 6331(a); and

- the IRS's giving the taxpayer notice of intent to levy, see secs. 6330(a)(1), 6331(d)(1), and of the taxpayer's right to a hearing, see secs. 6330(a)(3)(B), 6331(d)(4)(C).

If those requirements have been met, then the appeals officer can proceed to consider the other collection and liability issues. But if those basic requirements have not been met, then collection cannot proceed, and the appeals officer cannot sustain the proposed collection action.

In view of the mandatory nature of the verification requirement, "this Court will review the Appeals officer's verification under section 6330(c)(1) without regard to whether the taxpayer raised it at the Appeals hearing", Hoyle v. Commissioner, 131 T.C. ___ , ___ (2008) (slip op. at 11), if the taxpayer has adequately raised the issue in his petition filed in this Court, see Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded"). Where the taxpayer in a levy case contends that the appeals officer failed to obtain the requisite verification under section 6330(c)(1), the taxpayer has the burden of going forward with a prima facie case and has the burden of proof on that contention. See Butti v. Commissioner, T.C. Memo. 2008-82 (a CDP case involving a

verification issue (citing <u>Coleman v. Commissioner</u>, 94 T.C. 82, 89-90 (1990))); <u>Med. Practice Solutions, LLC v. Commissioner</u>, T.C. Memo. 2009-214 n.16.

Mr. Dinino's petition does, in a fashion, raise verification as an issue by stating:

> If, as here, no hearing has been conducted, an Appeals officer obviously could not have obtained <u>at the hearing</u> "verification from the Secretary that the requirements of any applicable law or administrative procedure have been met", as required by Section 6330(c)(1) * * *.

That is, he contends that a proper verification could not have been obtained "at the hearing" because (he says) no hearing occurred.

To the extent this argument is simply a restatement of Mr. Dinino's contention that no hearing occurred, we deal with it in part II.A above. To the extent that he asserts that, as a matter of fact, the appeals officer failed to obtain verification, the assertion fails for lack of proof. Mr. Dinino cites no evidence to support the assertion. And on the contrary, the appeals officer's declaration that respondent submitted in support of his motion explicitly states: "In arriving at my determination to sustain the proposed collection action, I verified that the requirements of law and administrative procedure were met." The appeals officer's attachment to the notice of determination includes a two-paragraph section entitled "Verification of legal and procedural requirements", in which he

states, inter alia, "Computer records[8] confirm that assessments were made and that notice and demand was timely issued to you. You did not pay the liability within ten days after notice and demand."  Respondent submitted with his motion a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for each calendar quarter at issue, showing an assessment of the trust fund recovery penalty, a "Statutory Notice of Balance Due" (i.e., the issuance of a notice and demand), and an unpaid balance.  The Forms 4340 are current (i.e., dated September 22, 2009), but we take them as evidence of the existence in the IRS's computerized records of the matters that are reflected on entries on the forms.  The appeals officer would have seen those entries when he consulted those records before the notice of determination was issued in February 2009.

Mr. Dinino alleges no particular defect in the agency's compliance with "applicable law or administrative procedure", and none is apparent.  He has not carried his burden to prove failure of verification.

---

[8]See Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002) (appeals officer does not abuse his discretion when, to obtain the verification required by section 6330(c)(1), he relies on an IRS transcript); see also Craig v. Commissioner, 119 T.C. 252, 261-262 (2002) (section 6330(c)(1) verification does not require the appeals officer to rely on any particular document for verification).

2. Consideration of Collection Alternative

a. Lack of an OIC and Supporting Information

Mr. Dinino requested a CDP hearing because (he said) he wanted to propose an offer-in-compromise; and such an offer must be considered by the appeals officer at a CDP hearing. See sec. 6330(c)(2)(A)(iii), (c)(3)(B). However, Mr. Dinino never actually proposed an OIC, so we can hardly say that the appeals officer abused his discretion by failing to consider an offer that was never made. It is not an abuse of discretion for an appeals officer to sustain a levy and not consider any collection alternatives when the taxpayer has proposed none. Kendricks v. Commissioner, 124 T.C. 69, 79 (2005).

Similarly, Mr. Dinino's failure to provide a financial statement and other supporting information likewise prevented the appeals officer from considering any collection alternative. During a section 6330 hearing, "Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing." Sec. 301.6330-1(e)(1), Proced. & Admin. Regs. An appeals officer may not consider a collection alternative unless the taxpayer has provided adequate financial information, such as a current Form 433-A. See Rev. Proc. 2003-71, sec. 4.03, 2003-2 C.B. 517, 518; see also Internal Revenue Manual (IRM) pt. 5.14.2.2.1(1), (5) (July 12, 2005),

5.14.7.4.1(5) (Sept. 30, 2004).  The appeals officer was therefore following the IRS's administrative guidelines when he asked Mr. Dinino to complete an updated Form 433-A.  See IRM pt. 5.14.2.2.1(1), 5.14.7.4.1(5).  It was not an abuse of discretion for the appeals officer to sustain the levy when Mr. Dinino failed to submit an up-to-date Form 433-A.  See Prater v. Commissioner, T.C. Memo. 2007-241; Chandler v. Commissioner, T.C. Memo. 2005-99; Roman v. Commissioner, T.C. Memo. 2004-20.

b.    Denial of a Further Extension of Time

Mr. Dinino's answer to the foregoing is to argue that the appeals officer abused his discretion by failing to give Mr. Dinino the additional time that his representative had requested so that he could produce the requested information. The reasonableness of a request for more time, and the reasonableness of a denial of such a request, will depend on the particular facts of the case; and on the facts of this case we cannot say that the appeals officer's handling of this case was unreasonably strict in this context.[9]

First, in deciding whether to grant a given request for more time, the appeals officer reasonably considered Mr. Dinino's prior conduct.  Mr. Dinino had completely ignored the scheduling

_____

[9]We consider the appeals officer's deadline in context. See, e.g., Morlino v. Commissioner, T.C. Memo. 2005-203; Roman v. Commissioner, T.C. Memo. 2004-20.

of his CDP hearing in June 2008 and had failed to participate.[10] His representative's first communication with the appeals officer was in September 2008--two and a half months after the hearing was already supposed to have been held. It might well have been reasonable for the appeals officer simply to refuse the September 2008 request for an opportunity for a hearing; he can hardly be criticized for waiting four months to close the case in January 2009, after Mr. Dinino continued to fail to submit his OIC and supporting information--first, failing to provide the information on October 1 and requesting more time; second, failing to provide the information on November 5 and requesting more time; and third, failing to provide the information on December 3 and requesting more time.

Second, the appeals officer's approach was not inconsistent with the IRS's guidelines. "There is no requirement that the

---

[10]Mr. Dinino's failure to participate and his subsequent inaction for two and a half months makes this case easily distinguishable from Meeh v. Commissioner, T.C. Memo. 2009-180, a case on which he relies, but in which the facts were very different from the facts of this case: In Meeh the taxpayers requested the rescheduling of their CDP hearing eleven days before the original hearing date, and the appeals officer was unavailable for the rescheduled hearing when the taxpayers initiated the agreed-upon phone conference. The taxpayers' subsequent lapses in Meeh thus arose in a factual context very different from the December 2008 delays of Mr. Dinino and his representative, which followed months of non-response and foot-dragging. Likewise, the facts were very different in Judge v. Commissioner, T.C. Memo. 2009-135, in which an appeals officer abused his discretion by denying a request for a brief extension to a taxpayer who (unlike Mr. Dinino) had responded promptly to the appeals officer's prior requests for information.

Commissioner wait a certain amount of time before making a determination as to a proposed levy." Gazi v. Commissioner, T.C. Memo. 2007-342. "Appeals will, however, attempt to conduct a CDP hearing and issue a Notice of Determination as expeditiously as possible under the circumstances." Sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. The appeals officer's manual instructed him: "Good case management practices dictate * * * [that] we allow a taxpayer * * * no more than 14 days" to provide the requested financial information. Internal Revenue Manual Abr. & Ann. (IRM-AA) pt. 8.7.2.3.4(6)(A) (Jan. 1, 2006).[11] Mr. Dinino had been allowed multiples of 14 days to submit his OIC and supporting information.

Third, Mr. Dinino actually did obtain a de facto extension of time. It is the policy of the Office of Appeals to consider financial information submitted past the deadline, and up to the time of the issuance of the notice of determination. IRM pt. 8.22.2.2.4.11(1)(C) (Oct. 30, 2007); see also IRM-AA pt. 8.7.2.3.4(10) (Jan. 1, 2006). Thus, Mr. Dinino had until his notice of determination was issued on February 2, 2009--i.e., more than eight weeks after his representative's initial request (on December 1, 2008) for more time to obtain the information--to make his submission to Appeals. But he did not do so. He

---

[11]See also Internal Revenue Manual (IRM) pt. 8.22.2.2.6.1(3) (Dec. 1, 2006).

requested more time, heard no response from the appeals officer, and then let two months pass without proposing an OIC or producing the information.

The appeals officer did not abuse his discretion by declining to give Mr. Dinino the additional time his representative requested.

### 3. Challenge to Underlying Liability

Paragraph 3 of Mr. Dinino's petition states: "The underlying tax liability alleged by Respondent to have existed on Petitioner's part is comprised of civil penalties under Section 6672", and paragraph 4 refers to "the alleged deficiency". (Emphasis added.) In case this is intended as a contention that the liabilities are only "alleged" and are not valid, we observe briefly the two reasons that Mr. Dinino may not dispute here the IRS's determination of his underlying liability.

First, Mr. Dinino does not allege that he had no prior opportunity to dispute his liability for the penalties at issue; and the only evidence in the record (i.e., the appeals officer's notes stating "TP * * * did go to appeals officer so precluded issue on CDP") indicates that he did have a prior opportunity.[12]

---

[12]See McClure v. Commissioner, T.C. Memo. 2008-136 (quoting sec. 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs. (26 C.F.R.): "An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability").

As we noted above, section 6330(c)(2)(B) permits a challenge to underlying liability only "if the person did not * * * have an opportunity to dispute such tax liability."  Therefore, Mr. Dinino may not dispute his liability for the trust fund recovery penalty in this CDP case.[13]

Second, the record before us gives no indication that Mr. Dinino ever contested the underlying liability during the CDP process before the Office of Appeals.  His Form 12153 requesting a CDP hearing mentions only his desire for an OIC and makes no suggestion of a dispute of liability.  His opposition to respondent's motion for summary judgment does not dispute the liability or allege that he attempted to dispute it before the Office of Appeals.  As a result, he may not dispute the liability in his appeal to the Tax Court.  See Giamelli v. Commissioner, 129 T.C. 107, 112-116 (2007).

### 4.  Balancing Efficiency and Intrusiveness

The Office of Appeals determined that the proposed collection action properly balanced collection efficiency and

---

[13]Presumably, Mr. Dinino could pay the penalty, or a "divisible" portion thereof, file an administrative claim for refund thereof in compliance with section 7422(a), and sue for a refund, thereby litigating his liability for the penalty.  See Brounstein v. United States, 979 F.2d 952, 954 n.1 (3d Cir. 1992).  Even if he cannot maintain a pre-payment dispute in the CDP context, he retains his post-payment remedies.

intrusiveness, as required by section 6330(c)(3)(C).[14] Mr. Dinino's petition makes no distinct contention about balancing under subsection (c)(3)(C), other than to argue (as with verification under subsection (c)(1)) that this balancing could not have occurred at the CDP hearing because (he argues) there was no hearing. We have found, however, that there was a hearing, and Mr. Dinino points to no defect in the balancing of efficiency and intrusiveness that the Office of Appeals did conduct.

## Conclusion

On the undisputed facts of this case, we cannot hold that the denial of the extension by the Office of Appeals was arbitrary, capricious, or without sound basis in fact or law. By its nature, the CDP process interrupts the collection of taxes that have been determined to be owed--an interruption that is well justified when it allows consideration of serious, bona fide disputes and concerns, but that is unfortunate when it allows a

---

[14]The attachment to the notice states:

Although intrusive, it [levy] is necessary for satisfaction of the liability. A reasonable time frame was offered for substantiation and submission of an updated complete financial statement. None of the requested substantiation has been submitted to Appeals by the agreed date. Insufficient information exists to allow any alternative collection resolution. Levy action will balance the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.

taxpayer to attempt to delay the inevitable by stringing the agency along. Mr. Dinino owed the Government half a million dollars--and yet a year after the IRS had served a notice of levy on Mr. Dinino, he still had not even proposed his OIC and produced his information. We conclude that the Office of Appeals did not abuse its discretion when it decided that, for Mr. Dinino's half-million-dollar trust fund liability, the process must come to an end; and we hold that respondent is entitled to the granting of his motion and the entry of a decision sustaining the determination and proposed levy.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.